**SO ORDERED.**

**SIGNED this 14th day of September, 2017.**



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

___

Designated for online use but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| JON LEWIS BOHLANDER, | CASE NO. 16-20952 |
| DEBTOR. | CHAPTER 13 |
| SHIRLEY A. BOHLANDER, | |
| PLAINTIFF, | |
| v. | ADV. NO. 16-6119 |
| JON LEWIS BOHLANDER, | |
| DEFENDANT. | |

### MEMORANDUM OPINION DENYING PLAINTIFF'S OBJECTION TO DEBTOR'S DISCHARGE OF MARITAL DEBT UNDER 11 U.S.C. § 523(a)(5) AND (a)(15)

Plaintiff Shirley A. Bohlander (Shirley), the former wife of Debtor Jon Lewis Bohlander (Jon), seeks a ruling that the unpaid balance of an award labeled a "Balancing payment" (Balancing Payment) included in the Decree of Dissolution of Marriage of

Shirley and Jon is excepted from discharge by 11 U.S.C. § 523(a)((5) and (a)(15).[1] The Court has jurisdiction.[2] An evidentiary hearing was held on July 20, 2017. Shirley appeared in person and by her counsel Bradley D. McCormack. Jon appeared in person and by his counsel Michael R. Norlen. There were no other appearances.

Having carefully considered the testimony of Shirley and Jon, and the applicable statutes and precedent, the Court finds that the Balancing Payment, interest, and related expenses are not domestic support obligations excepted from discharge by § 523(a)(5). Section 523(a)(15) is not applicable to a full-payment discharge in a Chapter 13 case under § 1328(a),[3] but does apply to a discharge granted under § 1328(b) before all plan payments are made. Because Debtor has not applied for a discharge under § 1328(b) and such a request is unlikely, the Court denies without prejudice Shirley's request to find the Balancing Payment and related charges to be excepted from discharge under § 523(a)(15).

**FINDINGS OF FACT**

Shirley and Jon were married on April 1, 2004. One child was born of the

---

[1] Future references to title 11 in the text shall be to the section number only.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2016). Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

[3] 11 U.S.C. § 1328(a)(2).

marriage. The parties separated in June 2007, and a Judgment and Decree of Dissolution of Marriage (the Judgment) was entered by the Circuit Court of Jackson County, Missouri, on November 5, 2007. The Judgment incorporated a Marital Settlement Agreement (Settlement Agreement) negotiated by the parties' attorneys. Both Shirley and Jon testified that they entered into the Settlement Agreement voluntarily, and had read and understood its provisions.

Shirley sought a divorce because there was a lot of drinking at the house, she was supporting Debtor and his two children, and Debtor had assaulted her using a gun. Initially, Shirley filed for a legal separation, but Jon responded with a counterclaim for divorce, and Shirley filed an Amended Petition for Dissolution of Marriage and Intentional Tort. The Settlement Agreement recited that it would "fully and for all times settle and determine all property rights of the parties, all rights of Wife and Husband concerning support and maintenance, all rights and claims arising out of the marriage relationship, . . . Wife's claims for intentional tort of assault/battery arising from alleged incidents during the marriage, . . . and all matters of child custody and support."

The Settlement Agreement provided that Shirley would be the custodial parent for their child and that Jon would pay child support of $513 per month, which Shirley agreed was sufficient for the child's ordinary expenses. At the time of the divorce, the child had a medical condition for which future treatment and hospitalization were anticipated. Shirley's health insurance covered the child, and Jon agreed to pay one-half of any out-of-pocket medical expenses. These child support obligations are not at issue in this

3

proceeding.

The Balancing Payment Jon owed to Shirley that is the focus of this action was defined by the Settlement Agreement as follows:

> 13. Balancing payment
>
>     a. To equalize the distribution of the marital assets and debts, Respondent [Jon] shall pay directly to Petitioner [Shirley], the amount of $300 per month for a period of sixty (60) consecutive months for a total of $18,000, starting on January 15, 2008, and due on the 15th of each month thereafter, until paid in full (Petitioner shall provide receipts for payments).
>
>     b. If any installment payment becomes more than thirty (30) days past-due, interest shall accrue on said unpaid installment from the date of the last payment made until paid like any other judgment of this court.

This paragraph was included in the Division of Property portion of the Settlement Agreement. With respect to maintenance, the Settlement Agreement provided:

> Both parties agree that they are waiving any and all claims for maintenance against the other. This waiver of maintenance is contractual and non-modifiable. Both parties agree that they are employed and have the ability to earn a living and neither is in need of maintenance. Both parties understand that by waiving maintenance at this point, they cannot come back into this Court or any other Court and request that maintenance be granted to them.

Shirley understood maintenance to be long-term support, for which she had no need. However, she did have a need for short-term support to "get back on her feet" after suffering a personal injury and participating in domestic violence counseling. She also

4

anticipated short-term medical and child care expenses for the couple's child for which the child support payment would not be sufficient. The parties' attorneys negotiated the terms of the settlement and included the short-term support under the Balancing Payment provision. Shirley would not have agreed to the settlement if there had been no provision for short-term support.

When consulting with Jon, Jon's attorney did not characterize the Balancing Payment as short-term support and explained to Jon that an award of support would have been taxable income to Shirley. Both Shirley and Jon agreed to the Settlement Agreement characterizing the $18,000 payment as a Balancing Payment because they wanted the matter to be finalized and concluded.

At the time of the divorce, Shirley had earned both bachelor's and master's degrees. She had stable employment and earned $45,000 to $48,000 per year, but testified without detail that her income was insufficient to cover her anticipated expenses, which included mortgage payments of an unstated amount and child support of $580 per month. At the time of the divorce, Jon was self-employed. There was no evidence of his expected income.

Both Shirley and Jon came to the marriage with separate assets and debts, and the separation was maintained. The marital assets were three lake lots that were purchased at a tax auction. They were awarded to Shirley in the divorce. Jon testified that the majority of the marital assets went to Shirley. He could think of no marital assets which were awarded to him that could be the basis for a property-distribution equalization

5

payment. During the marriage, there was no accumulation of marital debts other than ordinary household expenses, such as utility payments. When asked by his counsel whether the Balancing Payment was described as a payment on Shirley's debt, Debtor did not respond directly.[4]

Jon made the first Balancing Payment that was due on January 15, 2008, but soon fell into arrears. Shirley filed a motion for contempt in the divorce court. On July 19, 2009, Jon agreed to a Stipulated Judgment of Contempt Staying Punishment. It found that Jon's then-due-but-unpaid obligation to Shirley was $13,969, comprised of $5,700 on the marital distribution payment, $348 interest thereon to July 10, 2009, $5,221.35 in child support arrears, and $2,700 in attorney fees. The required payments were not made, and Shirley again sought an order of contempt. Various garnishment orders were issued, and Shirley received some payments.

Jon filed for relief under Chapter 13 on May 31, 2016. Shirley filed the current adversary proceeding on December 5, 2016, objecting pursuant to § 523(a)(5) and (a)(15) to the discharge of the amounts Jon owed on the Balancing Payment and on the Contempt Judgment, plus attorney fees under Missouri law. Shirley's amended proof of claim, filed on July 6, 2017,[5] asserted she is owed a domestic support obligation of $51,539.56. An attachment shows the claim is comprised of the following: a balance in principal plus

---

[4] Rather than answer the question, Jon said there was a discussion about Shirley's student loan debt that she had acquired in her own name while she was supporting the family with her employment income. Jon did not testify that the Balancing Payment was because of Shirley's student loan debt.

[5] Claim 2-2, case no. 16-20952.

6

interest of approximately $23,000 due on the Balancing Payment award, after a credit for approximately $10,000 that had been paid on the debt; attorney fees, plus interest, for the July 2009 contempt proceeding; collection costs, plus interest; and attorney fees incurred in Jon's bankruptcy case. There is no evidence or argument challenging Shirley's calculations.

**DISCUSSION**

**A. Jon's obligation to Shirley for the Balancing Payment is not excepted from discharge under § 523(a)(5).**

Section 1328(a) excepts certain debts from the discharge available to a Chapter 13 debtor after the completion of all the payments called for by his or her confirmed plan. Under § 1328(a)(2), the excepted debts include a domestic support obligation (DSO) as specified in § 523(a)(5). A "domestic support obligation" is defined in § 101(14A) to mean:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is —
> (A) owed to or recoverable by —
> (i) a . . . former spouse . . . of the debtor . . .
> (B) in the nature of alimony, maintenance, or support . . . of such . . . former spouse . . . , without regard to whether such debt is expressly so designated;
> (C) established . . . before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of —
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made . . . by a

7

> governmental unit; and
> (D) not assigned to a nongovernmental entity.

The provision excepting a DSO from discharge "'departs from the general policy of absolution, or "fresh start"' in order to 'enforce an overriding public policy favoring enforcement of familial obligations.'"[6]

Whether a debt is a nondischargeable DSO is a question of federal, not state, law. "Congress, by directing federal courts to determine whether an obligation is 'actually in the nature of alimony, maintenance, or support,' sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation."[7] "Because the label attached to an obligation does not control, an unambiguous agreement cannot end the inquiry."[8] "'[A] bankruptcy court *must* look beyond the language of the decree to the intent of the parties *and* the substance of the obligation' to determine whether the obligation is actually in the nature of alimony, maintenance or support."[9] Thus in the Tenth Circuit, "[t]he party seeking to hold the debt nondischargeable has the burden of

---

[6] *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir. 1993) (*quoting Shaver v. Shaver*, 736 F.2d 1314, 1315-16 (9th Cir. 1984)); *see also In re Charlton*, 2008 WL 5539789 at *5 (Bankr. D. Kan. Dec. 3, 2008) (although language of § 101(14)(B) is not identical to language of § 523(a)(5) before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended it and added § 101(14), cases such as *Sampson* interpreting pre-BAPCPA version of § 523(a)(5) are persuasive authority for interpreting § 101(14)(B)).

[7] *Id*. at 722.

[8] *Id*.

[9] *Id*. at 722-723 (*quoting Goin v. Rives (In re Goin)*, 808 F.2d 1391, 1392 (10th Cir.1987) (emphasis added)).

proving by a preponderance of the evidence that the parties intended the obligation as support *and* that the obligation was, in substance, support."[10]

After careful consideration, the Court concludes that the Balancing Payment is not a nondischargeable DSO. Shirley has met her burden of proving the first prong of the Tenth Circuit's two-pronged test, but not the second one.

The Settlement Agreement unambiguously states that the Balancing Payment is part of the division of property. Both parties acknowledge that they read, understood, and agreed to the Settlement Agreement and the designation of monthly payments as the Balancing Payment. However, the Court finds that the testimony establishes that the label was not in accord with the parties' intent. Shirley's testimony that she understood the payments to be in the nature of short-term support is very credible and convincing. The inclusion of short-term support was essential to her agreeing to the Settlement Agreement. Because she considered maintenance to be long-term support, she did not believe that her waiver of maintenance was inconsistent with her requirement that she receive short-term support. The short-term payments to Shirley were the final item negotiated between counsel. Although she was not happy with the language of the settlement, Shirley agreed to it because it included the $18,000 payment to her and because she just wanted to get the matter finalized.

Jon's testimony did not effectively refute Shirley's understanding. Jon acknowledged that there was no excess award of marital property necessitating or

---

[10] *Id*. at 723 (emphasis added).

justifying a balancing payment. In fact, in his opinion, Shirley was awarded excess marital property. Jon testified that there were no marital debts other than bills for ordinary living expenses. When asked, Jon did not directly answer the question whether the Balancing Payment related to marital debts. Jon understood from his counsel that if the monthly payments were characterized as support, they would have been taxable as income to Shirley. Like Shirley, Jon testified that he agreed to the Balancing Payment language because he wanted to have a final agreement and move on. The Court therefore concludes that the parties intended the Balancing Payment to be short-term support.

Next, the Court must determine if the Balancing Payment was in substance support. "The critical question in determining whether the obligation is, in substance, support is 'the function served by the obligation at the time of the divorce.'"[11] "[I]f an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is, in substance, a support obligation."[12] "This may be determined by considering the relative financial circumstances of the parties at the time of the divorce."[13] The Court finds that Shirley has not satisfied this element of her burden of proof.

Shirley was employed at the time of the divorce. She had bachelor's and master's degrees. Her salary was approximately $45,000 per year. Nevertheless, Shirley testified that this income was insufficient to cover her immediate expenses, which included mortgage payments and approximately $580 in child support for a child from a prior

---

[11] *Sampson*, 997 F.2d at 725 (*quoting In re Gianakas*, 917 F.2d 759, 763 (3rd Cir. 1990)).

[12] *Id*. at 726

[13] *Id*.

10

Case 16-06119    Doc# 42    Filed 09/14/17    Page 10 of 13

relationship. Shirley also testified the child support payments agreed to in the Settlement Agreement were adequate to cover the child's housing, clothing, food, and other everyday expenses. At the time of the divorce, the couple's child had a medical condition that required future care and hospitalizations, but those expenses were substantially covered by Shirley's insurance and Jon's agreement to pay one-half of the out-of-pocket expenses. As the custodial parent, Shirley had significant daycare expenses.

At the time of the divorce, Jon was self-employed. No evidence of his income was provided. Judging from Jon's current financial situation, the Court finds it unlikely that his financial position at the time of the divorce was very secure or that his income was higher than Shirley's.

The Court is not persuaded that the Balancing Payment functioned as support. The evidence is clear that Shirley desired the income as supplemental support and identified specific expenses for which she desired assistance. But Shirley earned significant income and had no truly extraordinary expenses. There is no evidence that she had health problems or that her employment was in jeopardy. She offered no evidence of her monthly expenses or the anticipated monthly cost of the items for which she testified she needed assistance. There is no evidence that the future medical expenses for the couple's child were likely to be financially burdensome, and Shirley and Jon agreed to equally share the child's uninsured medical expenses. There is no evidence that Shirley's income, together with the child support payments, would have been insufficient for Shirley and the child to maintain the standard of living to which they were accustomed

during the marriage.  There is no evidence that at the time of the divorce, Jon's income exceeded Shirley's.  In short, the Court finds that Shirley has failed to prove that she needed support at the time of the divorce and that the award functioned as support.

The Court therefore holds that the Balancing Payment, plus interest, awarded in the Judgment is not a domestic support obligation excepted from discharge under § 523(a)(5).  Attorney fees and related enforcement expenses can be excepted from discharge only if those awards separately satisfy the definition of a domestic support obligation, a condition which is not present here.

**B.  Jon's obligations to Shirley arising from the divorce are not excepted from discharge under § 523(a)(15).**

The § 523(a)(15) exception to discharge is applicable to debts owed:

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

However, unlike the § 523(a)(5) exception to discharge, this exception does not apply to a discharge granted after the completion of all Chapter 13 plan payments.[14]  In a Chapter 13 case, the § 523(a)(15) exception applies only in the unusual event that a discharge is granted under § 1328(b) after confirmation but before the debtor has completed all plan payments.[15]  Section 523(a)(15) also applies to all discharges granted in Chapter 7 cases.

---

[14] 11 U.S.C. § 1328(a).

[15] 11 U.S.C. § 1325(b) and (c).

12

This case is proceeding under Chapter 13. Jon has not moved for a discharge before he completes all his plan payments, and such a discharge is not likely. The Court therefore finds that Shirley's objection to discharge under § 523(a)(15) is premature, and denies the objection without prejudice to its renewal if Jon seeks a discharge under § 1328(b) or the case is converted to Chapter 7.

**CONCLUSION**

For the foregoing reasons, the Court denies Shirley's objection to the discharge of the Balancing Payment, interest, and associated enforcement expenses. Shirley did not sustain her burden to prove by a preponderance of the evidence that the parties intended the Balancing Payment to be for support *and* that the obligation was, in substance, support, as required to except it from discharge under § 523(a)(5). The objection to discharge under § 523(a)(15) is premature and is denied without prejudice.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this proceeding. A judgment based on this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058, which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

**IT IS SO ORDERED.**

###